| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------<br>In re<br><br>JOHN V. KERIVAN,<br><br>                Debtor.<br>----------------------------------------------------------- | NOT FOR PUBLICATION<br><br><br>Chapter 7<br><br>Case No. 09-14581 (AJG) |

**OPINION DENYING DEBTOR'S MOTION FOR CONVERSION
TO A CASE UNDER CHAPTER 13**

Before the Court is the motion of John V. Kerivan (the "Debtor") for conversion of his Chapter 7 case to a case under Chapter 13 (the "Motion") pursuant to 11 U.S.C. § 706(a).[1] In response to the Motion, the Chapter 7 Trustee (the "Trustee") filed an affirmation in opposition to the Debtor's Motion for conversion ( the "Affirmation") asserting that the Debtor does not qualify for conversion under 11 U.S.C. § 1307(c)[2] because the Debtor engaged in bad faith conduct. For the reasons set forth below, the Court finds that the Debtor engaged in bad faith conduct and forfeited his right to convert his Chapter 7 case to a case under Chapter 13.

**BACKGROUND**

On July 22, 2009 the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Petition"). The Debtor is currently self-employed and rents an apartment with his spouse, who is unemployed, and his mother who contributes to the household

---

[1] 11 U.S.C. § 706(a) provides that "[t]he debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable." 11 U.S.C. § 706(a) (2009).

[2] 11 U.S.C. § 1307(c) provides that a "court may convert a case under this chapter to a case under Chapter 7 of this title, or may dismiss a case under this chapter, . . . for cause." 11 U.S.C. § 1307(c) (2009).

expenses. The Debtor was previously married, and his only potential asset derives from property (the "Property") he owned jointly with his ex-wife. Upon their divorce, they entered into a settlement agreement on April 8, 2002 (the "Divorce Settlement"), whereby the Debtor's ex-wife retains sole possession of the Property and the exclusive right to decide when, and if, the Property will be placed on the market for sale. Pursuant to the Divorce Settlement, upon sale of the Property, the Debtor is entitled to 40% of the proceeds less any existing mortgage, closing costs, and other related expenses (the "Interest"). On June 20, 2007, however, the Debtor removed his name from deed to the Property and transferred the deed to his ex-wife for no consideration even though he was under no legal obligation to do so.

When the Debtor filed the Petition, he failed to disclose the Interest under the Divorce Settlement.[3] The Trustee subsequently discovered the Interest along with the transfer of the deed and requested supporting documentation from the Debtor and his ex-wife. On April 2, 2010, the Trustee initiated an adversary proceeding against the Debtor's ex-wife alleging fraudulent transfer of the Property and seeking to avoid the transfer and recover the value[4] of the Interest.[5] Weeks later, on April 22, 2010, the Debtor moved to convert his case to Chapter 13. From the time of the Debtor's initial Chapter 7 filing to the time of the filing of the Motion, the Debtor's income and expenses were largely unchanged. The most significant change occurred upon filing of the Motion, when the Debtor's mother agreed to contribute a portion of her retirement income towards payment of the Debtor's debt. In the Petition, the Debtor reported negative net income

---

[3] Although the actual impact of the transfer on the Interest is unclear, see *supra* note 3, in either event, the Debtor asserts that he retained the Interest, acknowledged the Interest in the Motion, and failed to disclose it the Petition. The Debtor also did not disclose the transfer of the deed to his ex-wife in the Petition, but disclosure in the Petition was not required because the transfer was not made within two years of the commencement of the case. The transfer was made by deed dated June 20, 2007, and the Petition was filed on July 22, 2009.

[4] The Trustee estimated the 40% Interest at approximately $137,000 based on current market values less the outstanding mortgage and estimated closing costs and expenses.

[5] The adversary proceeding is based on the Trustee's assumption that the Debtor relinquished the 40% Interest when he transferred the deed to his ex-wife. *See supra* note 3. The Trustee represents that he is also engaged in settlement discussions with the Debtor's ex-wife to liquidate the Interest.

2

on Schedules I and J, but as a result of the contribution from his mother, the Debtor reported positive net income on the Amended Schedules I and J provided with the Reply. In the Reply, the Debtor stated that he has sufficient income to make payments to his creditors, and he proposed a payment plan which would result in a payout of approximately $15,480 to his unsecured creditors.[6]

In the Affirmation, the Trustee contends that the Debtor does not qualify for conversion under 11 U.S.C. § 1307(c) because of bad faith evidenced by the Debtor's transfer of the Interest[7] and the timing of the filing of the Motion. In the Motion, the Debtor acknowledged the Interest, but stated that he did not disclose it in the Petition or accompanying schedules because he "believed that [his] interest in the former marital residence was so speculative that it had no real ascertainable value as an asset." The Debtor also maintains that the Motion was made in good faith. This Opinion will address the Trustee's contention of bad faith as a basis for denial of the Debtor's Motion for conversion.

## DISCUSSION

The Supreme Court recently held that a debtor's right to convert a Chapter 7 case to Chapter 13 is not absolute within the meaning of 11 U.S.C. § 1307(c) and may be forfeited upon a finding of bad faith. *Marrama v. Citizens Bank*, 549 U.S. 365, 373-74 (2007). The Court declined to address what type of conduct qualifies as "bad faith" but noted that the conduct must be "atypical." *See id.* at 374-75, 375 n.11. While bad faith should be analyzed in light of "the totality of the circumstances," courts have articulated a variety of factors to be considered when determining the existence of bad faith. *See In re Armstrong*, 409 B.R. 629, 634 (Bankr.

---

[6] The Debtor proposes a payment plan consisting of 60 monthly payments of $258.00 towards his unsecured debt. The Debtor currently has a total of $95,000 in unsecured debt, approximately $9,000 of which has already been settled, and $16,000 of secured debt from an automobile lease.
[7] *See supra* notes 3, 6.

3

E.D.N.Y. 2009).  Such factors include, but are not limited to: (1) whether the debtor was forthcoming with the court; (2) whether the debtor accurately stated facts, debts, and expenses; (3) whether the debtor misled the court through fraudulent misrepresentation; (4) the timing of the petition; (5) the debtor's motive in filing the petition; (6) how the debtor's actions affect creditors; and (8) whether the debtor has abused the purpose of the bankruptcy code.  *Id.* (citations omitted); *see also In re FMO Assoc. II, LLC.*, 402 B.R. 546, 551-52 (Bankr. E.D.N.Y. 2009); *In re Clave*, No. 07-63887, 2008 WL 1902204, at *3 (Bankr. N.D.N.Y. Apr. 28, 2008). Although a debtor's conduct may suggest some bad faith, bankruptcy judges have broad discretion to determine whether the conduct rises to the level that would result in an abuse of process and warrant denial of the conversion.  *See Marrama*, 549 U.S. at 375.

**Nondisclosure and Misrepresentation of Assets**

While courts consider nondisclosure and the accuracy of representations in general, several courts have specifically found bad faith in cases where a debtor seeks to convert to Chapter 13 after the trustee discovers and attempts to liquidate assets that the debtor initially did not disclose or misrepresented in attempt to conceal or shelter those assets from creditors.  *See Marrama*, 549 U.S. at 371; *In re Shafer*, No. 07-14206, 2009 WL 1651294, at *8 (Bankr. D. N.J. June 10, 2009); *see also Clave,* No. 07-63887, 2008 WL 1902204, at *2 (stating that "one important factor is whether a debtor intentionally attempted to conceal assets from creditors"). Because motions for conversion should only be denied in exceptional circumstances, innocent nondisclosures or misrepresentations, such as where the value of the asset is not obvious or nondisclosure is at the advice or error of counsel, may be insufficient, absent other conduct, to warrant a finding of bad faith.  *See Marrama*, 549 U.S. at 375 n.11 (stating that denial of conversion should be limited to extraordinary circumstances); *Armstrong*, 409 B.R. at 634-35

(finding an absence of bad faith where the debtor relied on the advice of counsel in a post-petition sale of property and failed to review schedules prepared by counsel for errors); *In re Murray*, 377 B.R. 464, 469-70 (Bankr. D. Del. 2007) (finding an absence of bad faith for nondisclosure of a license plate valued over $200,000, and that nondisclosure of a valuable license plate was not obvious like the property in *Marrama*). *But see Shafer* No. 07-14206, 2009 WL 1651294, at *8 (stating that although the nondisclosure could be attributed to poor advice from counsel, that is not an excuse for dishonesty).

In *Marrama*, the petitioner disclosed a property, held in trust for his sole benefit, in his initial Chapter 7 petition and schedules but valued the property at $0.00. *See Marrama*, 549 U.S. at 368. The trustee later discovered the property to be of "substantial value," and that the petitioner also failed to disclose the transfer of the property into trust for no consideration prior to the filing of the petition, attempted to obtain a homestead exemption on rental property, and failed to disclose a tax refund. *See id.* at 368, 369 n.3. After the trustee notified the petitioner of his intent to recover the property as an asset of the estate, the petitioner moved for conversion to Chapter 13. *Id.* at 368-69. The trustee and the principal creditor opposed the motion, asserting that it was made in bad faith and constituted an abuse of process. *Id.* at 369. The petitioner claimed the misstated value of the property was due to scrivener's error, but the lower court held that "there is no 'Oops' defense to the concealment of assets" and the debtor's actions constituted bad faith. *Id.* at 369-70. Similarly, in *Shafer*, the debtor failed to disclose real property and a property settlement agreement with his ex-wife. *See Shafer*, No. 07-14206, 2009 WL 1651294, at *3-4. When the trustee learned of the properties in the § 341 meeting and attempted to liquidate the potential assets, the debtor filed for conversion. *See id.* at *3, 8. The trustee and creditors opposed the motion, asserting bad faith and fraudulent transfer of property.

5

*Id.* at *3. The court found the debtor's conduct to be "atypical" and in bad faith because he was not forthcoming with the court, admittedly did not disclose all of his assets, and was generally uncooperative with the trustee's investigation and requests for information. *See id.* at *8-9 (noting that the debtor failed to provide clarification to the court of which properties he owns or had previously owned).

    Here, similar to the nondisclosures of the debtors in *Marrama* and *Shafer*, the Debtor did not disclose the Interest on the Petition or accompanying schedules.[8] When the Trustee learned of the Interest and the transfer of the deed, he requested documents from the Debtor and his ex-wife. While it is unclear what information or documents were provided to the Trustee in response to his request, the Debtor later stated in the Motion that he did not disclose the Interest because he believed it "was so speculative that it had no real, ascertainable value." He also stated in the Reply that he transferred the deed to his ex-wife for refinancing purposes, not to avoid creditors. Here, in contrast to the debtors in *Marrama* and *Shafer*, the Debtor's nondisclosure allegedly was based on his belief that the Interest did have not have value and thus, may fall short of intentional or fraudulent concealment of assets. Nonetheless, the Debtor's nondisclosure still supports a finding that he was not forthcoming with the court. The Debtor may have believed the Interest did not have value, but that does not excuse nondisclosure. *See In re Gonyer*, 383 B.R. 316, 322 (Bankr. N.D. Ohio 2007) ("The integrity of the bankruptcy process rests upon a debtor's full and honest disclosure of all required information."). Schedule A of the Chapter 7 petition provides debtors with the opportunity to include the value of their disclosed property interests, and the Debtor could have disclosed the Interest while still indicating that he believed it was worthless. Accordingly, while the Debtor's nondisclosure alone may be insufficient to find bad faith, when combined with the filing of the Motion just weeks after the

---

[8] *See supra* note 4.

6

Trustee initiated the adversary proceeding and with the Debtor seeking conversion from Chapter 7 to Chapter 13 to frustrate the efforts of the Trustee, the totality of the circumstances points to bad faith.

**The Debtor's Motive for Moving for Conversion**

The *Piccoli* court, however, emphasized that while pre-bankruptcy conduct should be analyzed, the debtor's purpose for conversion should be given greater weight. *See Piccoli*, No. 06-2142, 2007 WL 2822001 at *7. There, the debtor disclosed but understated the value of her residence in her initial Chapter 7 petition by about $20,000, failed to disclose that she had recently transferred her interest in the property to her family for no consideration, and inaccurately stated her unsecured claims during settlement negotiations. *Id.* at *1. Once the trustee sought to liquidate the equity in the debtor's residence to pay creditors, the debtor filed for conversion. *Id.* at *7. Although the debtor's conduct was not as egregious as that of the debtors in *Marrama* and *Shafer*, the district court affirmed the bankruptcy court's finding of bad faith because the debtor was not forthcoming with the court and sought conversion to avoid the consequences of the Chapter 7 filing. *See id.* at *5, 8.

Here, as in *Marrama*, *Shafer*, and *Piccoli*, the timing of the Motion combined with the minimal change in the Debtor's financial position suggests that he filed the Motion to avoid the consequences of the Chapter 7 filing, specifically the Trustee's pursuit of the Interest. In *Marrama*, the petitioner admitted that he transferred the property solely to shelter it from creditors, and the Court stated that debtors who abuse process to the disadvantage of creditors are not within the "honest, but unfortunate" category of debtors the code was designed to protect. *Marrama*, 549 U.S. at 368-69, 374 (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). Although the Debtor maintains that the Motion was made in good faith, the court in *Piccoli*

7

found bad faith despite the debtor's stated reasons for her behavior. *See Piccoli*, No. 06-2142, 2007 WL 2822001, at *2, 8 (claiming that despite a home appraisal, she understated the value to account for needed repairs and transferred the property to keep it in the family after her death). Accordingly, the Debtor's behavior indicates that the purpose of the Motion is to shelter the Interest from creditors, which would result in an abuse of process.

**The Impact of Conversion on Creditors**

In addition to nondisclosure or misrepresentation and the debtor's purpose for conversion, courts also consider the impact of the conversion on the creditors. *See Armstrong*, 409 B.R. at 634; *Shafer*, No. 07-14206, 2009 WL 1651294, at *7; *Clave*, No. 07-63887, 2008 WL 1902204, at * 3. In *Piccoli*, liquidating the value of the debtor's property was more beneficial to creditors than repayment through a Chapter 13 payment plan, and thus, a Chapter 13 conversion would be prejudicial to the creditors. *See Piccoli* at *9. Similarly, in *Shafer*, while the debtor did not confirm his precise assets, the court concluded that the prejudice to his creditors would outweigh the benefit to the debtor because he could not present a confirmable Chapter 13 payment plan that would result in at least as much as a Chapter 7 liquidation. *Shafer*, No. 07-14206, 2009 WL 1651294, at *10.

Here, due to the nature of the Interest and the possibility that the Trustee may be unable to liquidate the Interest, the effect on the creditors is difficult to ascertain. If the Interest, currently estimated at $137,000,[9] can be liquidated, then Chapter 7 is superior to his proposed Chapter 13 plan, which would result in only about a $15,480 payout to his creditors. In some instances where the creditors agree to conversion, however, evidence of bad faith may be outweighed and denial of conversion may not be justified. *See FMO Assoc. II, LLC.*, 402 B.R. at 547, 550-52 (stating that *Marrama* applies equally to Chapter 11 conversions and finding some

---

[9] *See supra* note 3.

evidence of bad faith insufficient to deny conversion where the primary creditor did not object to the conversion). Based upon the record to date, it would appear that the liquidation of the Interest in Chapter 7 would be more beneficial to the creditors.

## CONCLUSION

Accordingly, the Debtor's initial nondisclosure of the Interest combined with the timing of the Motion for conversion indicate that the Debtor filed for conversion in bad faith to avoid the consequences of his Chapter 7 filing. For the foregoing reasons, the Debtor's Motion is DENIED.

A separate order consistent with this opinion will be entered.

Dated: New York, New York
      June 15, 2010

                                    **s/Arthur J. Gonzalez**
                                    ARTHUR J. GONZALEZ
                                    CHIEF UNITED STATES BANKRUPTCY JUDGE